**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 07-84 (PF) |
| : | |
| JUAN STEWART, : | |
| : | |
| Defendant. : | |
| : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing, recommending that the defendant be sentenced to a total period of incarceration of 71 months, followed by five years of supervised release. In support thereof, the United States respectfully states the following:

**Background**

1.  The details of the defendant's actions pertaining to this plea agreement are fully laid out in the proffer of evidence signed and admitted to by the defendant on October 12, 2007. In summary, the defendant came to the attention of the Metropolitan Police Department based on complaints made concerning suspicious activity at the Cuttin' Up Barber Shop, located at 1206 9th Street, N.W., Washington, D.C.

2.  Beginning in April 2005, members of the Metropolitan Police Department (MPD), together with an MPD special employee (SE/603), conducted a series of four transactions with the defendant which were recorded using both video- and audio-tape. In each of these transactions, MPD supplied various bait property, such as Nintendo Game Boys, Sony Playstations, various DVD movies and games, and a VISA credit card. In each instance, the

property offered to the defendant was suggested to be stolen. In each of the four transactions, the defendant accepted the property and provided the MPD employees with something of value in return. On several occasions he provided the MPD employees with money, and on three of the occasions, he also provided the MPD employees with crack cocaine.

3. In addition, on May 5, 2005, members of MPD met with the defendant and provided him with money ($150) in exchange for crack cocaine (2.83 grams).

4. At the conclusion of these five transactions, MPD officers applied for and received a warrant to arrest the defendant and to search his home, the Cuttin' Up Barber Shop, and the defendant's car. On June 1, 2005, these warrants were executed and the defendant was arrested. A search incident to his arrest yielded a 22.2 gram rock of crack cocaine on his person. In addition, the searches of his various properties revealed numerous items of stolen property, including several items that had been provided by MPD during its operations targeting the defendant.

5. The drugs recovered from the defendant on each of these occasions totaled 29.6 grams; each substance was tested by the Drug Enforcement Administration and found to be crack cocaine.

**Statutory Penalties**

6. Pursuant to Title 21, United States Code, Section 841(b)(1)(B), the defendant faces a maximum sentence of 40 years of imprisonment, a mandatory minimum sentence of 5 years of imprisonment, a fine of $2,000,000, and a term of supervised release of at least four years. In addition, the defendant must pay a special assessment fee of $100 per felony conviction to the Clerk of the Court for the District of Columbia.

**Sentencing Guidelines**

7.     The Federal Sentencing Guidelines calculation embodied in the Presentence Report places the defendant's total offense level at 26. See PSR ¶ 19. (This calculation is lower than the stipulated offense level in the plea agreement because of the 2007 amendments to the Sentencing Guidelines.)  The PSR correctly affords the defendant a three-point reduction in his guidelines calculation for acceptance of responsibility, which diminishes his total offense level to 23.  See PSR ¶ 26.  The PSR calculates the defendant's criminal history score as 4, which includes a 2-point enhancement because his current offense was committed while he was under a criminal justice sentence for a prior possession of cocaine conviction.  See PSR ¶ 33.  The Guideline range for the defendant is therefore calculated at 57 to 71 months of imprisonment. See PSR ¶ 78.

**Sentencing Recommendation**

8.     The government recommends that the Court sentence the defendant to 71 months of incarceration, followed by five years of supervised release, for this offense.

10.    The district court should next consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a).  See United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to

avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

9.      This sentence is at the high end of the guideline range.  In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  <u>Booker</u>, 125 S. Ct. at 756.  Nonetheless, and as the Supreme Court stated earlier this month, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  <u>See</u> <u>United States v. Gall</u>, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").  The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.  <u>See</u> <u>United States v. Rita</u>, ___ U.S. ___, 127 S.Ct. 2456 (2007).  <u>See also</u> United States Sentencing Comm'n, <u>Supplementary Report on the Initial Guidelines and Policy Statements</u> 16-17 (1987); <u>see</u> <u>also</u> 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  And the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  <u>Booker</u>, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

11.     The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1).  The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.  See Gall, at * 7.

12.     In this case, the defendant did more than just possess a substantial amount crack with the intention to distribute it.  He engaged in five transaction with MPD employees in which he received property that he knew to be stolen in exchange for crack cocaine and/or money.  The defendant thus not only distributed drugs, he also engaged in the trafficking of stolen property.  And although the amount of the drugs he provided to MPD is included in his relevant conduct calculation, the fact of his repeated property crimes is not.  Therefore, a high-end Guidelines-compliant sentence is justified in this case.

13.     Moreover, the defendant has a prior history of possessing narcotics and stolen property, often one in conjunction with the other.  In 1991, the defendant was convicted of a property-related offense in Jacksonville, Florida.  In 1997, he was convicted for possession of marijuana in D.C. Superior Court.  At the time of this arrest, he was also found to be in possession of four stolen credit cards.  Again in 2004, the defendant was convicted of possession of narcotics (this time cocaine); the arrest took place at the Cuttin' Up Barber Shop.  The defendant thus has a history of prior similar offenses.

14.     The defendant has repeatedly – by his own admission – engaged in the illegal procurement of narcotics during his supervision in this case.  The defendant admits to smoking marijuana once a week.  See  PSR ¶ 50.  A November 7, 2007, urinalysis was positive for

marijuana.  See PSR ¶ 53.  Moreover, this pattern is one he has engaged in previously – his period of supervision in D.C. Superior Court for his 2004 offense was similarly marred by positive urinalyses for marijuana and cocaine.  See PSR ¶ 30.

15.    The defendant's conduct in this case warrants a sentence that reflects the seriousness of the offense and the threat the defendant poses to the community, particularly in light of his trafficking in stolen property for drugs and his lack of ability to comply with the terms of any court's supervision orders.

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully recommends a sentence of a period of 71 months of incarceration, followed by a five year period of supervised release.

Respectfully,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By: _____/s/_____
JOCELYN S. BALLANTINE
ASSISTANT UNITED STATES ATTORNEY
C.A. Bar Number 208267
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States' Memorandum in Aid of Sentencing was served upon counsel of record for the defendant, Charles O'Banion, 666 11th Street, N.W., Suite 515, Washington, DC 20001, through the electronic court filing system, this 24th Day of December 2007.

_____/s/_____
JOCELYN S. BALLANTINE